IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

|  |  |  |
|---|---|---|
| IN RE | ) | |
| | ) | |
| LANAI PROPERTIES, LLP, ET AL., | ) | CASE NO. 08-80518-H3-11 |
| | ) | |
| Debtors, | ) | (Jointly Administered) |
| | ) | |
| RICKEY FONTENOT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | ADV. NO. 09-8010 |
| | ) | |
| INTERNATIONAL BANK OF COMMERCE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

<u>MEMORANDUM OPINION</u>

       The court has held a hearing on the Plaintiff's request for a preliminary injunction in the above captioned adversary proceeding. The following are the Findings of Fact and Conclusions of Law of the court. A separate Preliminary Injunction will be entered. To the extent any of the Findings of Fact are considered Conclusions of Law, they are adopted as such. To the extent any of the Conclusions of Law are considered Findings of Fact, they are adopted as such.

<u>Findings of Fact</u>

       Lanai Properties, LLP, Summerfield Partners, LP ("Summerfield"), Pearland Development, LLC, and The Maverick Group, LLP (collectively, "Debtors") filed voluntary petitions under Chapter 11 of the Bankruptcy Code on December 2, 2008. By

order entered January 14, 2009, the cases were jointly administered.  The petition in each of the cases was signed by John J. Kelly, as "Managing Partner" as to Lanai Properties, LLP, Summerfield, and The Maverick Group, LLP, and as "Manager" as to Pearland Development, LLC.  The Pearland Development, LLC, and The Maverick Group, LLP cases were dismissed, on the Debtors' motion, by order entered June 15, 2009.

In the instant adversary proceeding, Rickey Fontenot seeks injunctive relief prohibiting International Bank of Commerce ("IBC"), the first lienholder in Summerfield's real estate,[1] from foreclosing Fontenot's asserted second lien.

Fontenot and IBC have stipulated that Summerfield purchased the property from Fontenot on November 8, 2006.  Fontenot agreed to sell the property to Summerfield for $2,115,000.  On the date of closing of the sale, Fontenot learned that he would not be receiving cash for the sale, and that a lender would take a first lien on the property, prior to Fontenot's second lien.  Fontenot does not dispute the validity of IBC's first lien.

Fontenot and IBC have stipulated that Fontenot did not draft the note payable to Fontenot or the second lien deed of

---

[1] Debtor's schedules indicate that the property, approximately 140 acres located in Chambers County, Texas, forms the bulk of Summerfield's assets.  The only other assets listed in Summerfield's schedules are $124.52 on deposit at IBC and $66,757 in accounts receivable listed as due from an affiliate.

trust on the property.  The second lien deed of trust correctly describes the property, but does not contain an amount or Fontenot's name.

In a separate adversary proceeding, Debtor Summerfield has sought a determination that Fontenot's second lien is invalid, on grounds the deed of trust "fails to give notice of the identity of the purported second lienholder and the amount of the debt purportedly secured by the Property."  (Docket No. 1, Adv. No. 09-8007).  Fontenot has counterclaimed in that adversary proceeding for reformation of the second lien deed of trust, or alternatively, for rescission of the sale.  (Docket No. 8, Adv. No. 09-8007).

Fontenot, whose highest level of education is high school, testified that he first learned that he would not be receiving cash for the sales price of the property at the closing of the sale.  He testified that Summerfield's attorney, Keith Lane, prepared the documents while Fontenot and Kelly ate lunch, and that the documents were presented to him to sign after lunch. He testified that he would not have entered into the transaction if he had known that there were problems with the wording of the deed of trust.

Fontenot testified that Kelly told him that he was not receiving cash because Summerfield needed the proceeds of the IBC loan to develop the property.  He testified that he did not know,

at the closing, that IBC was the lender.  He testified that he first became aware that IBC was the lender when he received a check for approximately $398,000.

Fontenot testified that Summerfield has taken no action to develop the property, other than completing a survey of the property.  He testified that he sees the property every day.

On January 22, 2009, IBC moved for relief from stay with respect to the property of the Debtors, including Summerfield.  (Docket No. 30, Case No. 08-80518-G3-11).  The stay was lifted by an agreed order, entered on March 18, 2009, and bearing the signature of counsel for Fontenot.  (Docket No. 48, Case No. 08-80518-G3-11).

In the instant adversary proceeding, IBC takes the position that Fontenot has waived any right to injunctive relief, by virtue of agreeing to the lifting of stay.  (Docket No. 6).

Fontenot testified that, at the time when he agreed to lifting of the stay, Summerfield had not yet filed Adversary No. 09-8007, and he did not know of any challenge to his second lien.

<u>Conclusions of Law</u>

In determining whether to grant a preliminary injunction, the court considers the existence of irreparable harm to the Plaintiffs and absence of an adequate remedy at law; the Plaintiffs' probability of success on the merits; the balance of the threat of harm to Plaintiffs against the threat of harm to

the opposing party; and the public interest.  Commonwealth Life Ins. Co. v. Neal, 669 F.2d 300 (5th Cir. 1982).

Considering the instant adversary proceeding in light of the matters pending in Adversary No. 09-8007, there is an immediate and irreparable harm to Fontenot if an injunction is not granted.  The foreclosure of a first lien on the property would operate to extinguish the second lien, in the absence of a sale price at foreclosure in excess of the amount owed to the first lienholder.[2]  See Hampshire v. Greeves, 143 S.W. 147 (Tex. 1912).  There is no additional property to satisfy Summerfield's debt to Fontenot, and no evidence before the court at this time that any other party is liable to Fontenot.

As to the probability of success on the merits, the court notes that, as between the parties to the deed of trust, the deed of trust would be binding.  See In re White, 2009 WL 2006839 (Bankr. S.D. Tex. 2009); Tex. Prop. Code § 13.001.  It appears that the deed of trust contains ambiguous terms, and thus the court could consider extrinsic evidence as to the parties intent.[3]

---

[2] The court notes that no evidence was presented as to the value of the property.  In the complaint in the instant adversary proceeding and various other pleadings, Fontenot has contended that the value of the property is in excess of $5 million.  The court makes no finding or conclusion as to the value of the property at this time.

[3] The court notes that, presuming the instant adversary proceeding and Adversary No. 09-8007 reach trial, Fontenot should anticipate that his own testimony, standing alone, may be

As to the balance of the threat of harm to Fontenot against the threat of harm to IBC, IBC argues that it has not received payment from Summerfield on its note, and thus seeks to foreclose. However, the balance of the potential harm to Fontenot, in potentially losing what he asserts is approximately three-quarters of the bargained-for consideration for the sale of the property, outweighs the harm to IBC from delay.[4]

There do not appear to be significant public interest factors either in favor of either enjoining the foreclosure or not enjoining the foreclosure.

The court concludes, based on the totality of the circumstances, that a preliminary injunction should issue, enjoining IBC from foreclosing pending the court's final resolution of the instant adversary proceeding.

Signed at Houston, Texas on July 31, 2009.

_____
LETITIA Z. PAUL
UNITED STATES BANKRUPTCY JUDGE

---

insufficient to establish the terms of the agreement between the parties; and that he will need to call Kelly as a witness.

[4] The court anticipates mitigation of this delay, to the extent possible, by accelerating the schedules for trial of both the instant adversary proceeding and Adversary No. 09-8007.